IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SANDRA MEADE                                                            PLAINTIFF

V.                                      CASE NO. 3:16-CV-00064 BD

NANCY A. BERRYHILL, Acting Commissioner,
Social Security Administration                                          DEFENDANT

## ORDER

## I.  Introduction:

Plaintiff, Sandra Meade, applied for disability benefits on May 10, 2013, alleging

a disability onset date of June 9, 2008.  (Tr. at 12)  After conducting a hearing, the

Administrative Law Judge ("ALJ") denied her application. (Tr. at 21)  The Appeals

Council denied her request for review.  (Tr. at 1)  The ALJ's decision now stands as the

final decision of the Commissioner, and Ms. Meade has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands

for further review.

## II.  The Commissioner's Decision:

The ALJ found that Ms. Meade had not engaged in substantial gainful activity

since the alleged onset date of June 9, 2008.  (Tr. at 14)   At Step Two, the ALJ found that

Ms. Meade had the following severe impairments: asthma, chronic obstructive pulmonary

disease ("COPD"), sinusitis, and obesity.  (Tr. at 14)

---

[1]The parties have consented in writing to the jurisdiction of a United States
Magistrate Judge.

After finding that Ms. Meade's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Ms. Meade had the residual functional capacity ("RFC") to perform light work with additional limitations:  she could lift and carry twenty pounds occasionally and ten pounds frequently; she could stand or walk up to six hours in an eight-hour workday; she could never climb ladders, ropes, or scaffolds; she could not work around unprotected heights; she could not be exposed to concentrated heat extremes; and she could not be exposed to concentrated fumes, odors, and gases. (Tr. at 16)

The ALJ found that Ms. Meade could perform her past relevant work, which directs a finding of "not disabled."  (Tr. at 18)  The ALJ, however, made an alternative finding at Step Five.  (Tr. at 19)  He relied on the testimony of a Vocational Expert ("VE") to find that, based on Ms. Meade's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform at the light level, specifically, general office clerk and personal care assistant.  (Tr. at 20)  Based on that Step Five determination, the ALJ found that Ms. Meade was not disabled. (Tr. at 21)

## III.  **Discussion**:

A.  Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence.  *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

"Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Id*. (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Ms. Meade's Argument on Appeal

Ms. Meade argues that substantial evidence does not support the ALJ's decision to deny benefits because the ALJ erred in his RFC determination and failed to fulfill his duty to develop the record. The Court agrees.

A claimant's RFC represents the most she can do despite the combined effects of all credible limitations. It must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining a claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The RFC in this case was not based on substantial evidence in the record as a whole.

Ms. Meade began treatment for chronic asthma and sinus infections in April 2007. (Tr. at 369-370)  Linda Farris, APN, diagnosed chronic sinusitis and rhinitis after finding enlarged bilateral turbinates.  (Tr. at 369)  A May, 2007 CT scan showed mucosal thickening and chronic sinusitis as compared to a March 2007 study.  (Tr. at 317)  Ms. Farris prescribed Levaquin, Advair, Singulair, steroidal nose spray, and antibiotics.  She also recommended allergy testing.  (Tr. at 373)  Ms. Meade made an appointment for allergy testing, but she missed her appointment.  (Tr. at 372)  She admitted that, as a single mother, working full-time and attending to her children's schedules, she could not keep the appointment.  *Id*.

From October 2007 to March 2008, Ms. Meade saw three APNs and three doctors (including otolaryngologist Bryan Landsford, M.D.) for constant sore throat, nasal congestion, decreased hearing, facial pain and pressure, periorbital pain, headaches, and low-grade fever, among other symptoms.  (Tr. at 337-343, 374-379, 395-396)  She was treated with antibiotics one to three times a month, and she used prednisone, Advair, Zyrtec, and nose spray, with little relief.  *Id*.  She began a prolonged course of injections of Decadron.  (Tr. at 341)

Ms. Meade presented at South Mississippi County Regional Medical Center on December 6, 2007, with a productive cough, in spite of taking antibiotics and expectorants.  (Tr. at 397)  She stayed in inpatient care for three days.  (Tr. at 395-399)  Chest films were normal, but her problems were severe: she was treated with IV

4

Levaquin, Solu-Medrol, prednisone, Bidex, and an updraft machine.  (Tr. at 397)  She began using an albuterol inhaler as prescribed.  *Id.*

Dr. Lansford performed bilateral endoscopic sinus surgery on April 7, 2008.  (Tr. at 352)  Ms. Meade was doing well after surgery, but on April 19, 2008, she went to Great River Medical Center for post-operative bleeding.  (Tr. at 320-325)  Dr. Lansford performed a debridement to remove scar tissue.  (Tr. at 360-361)

Ms. Meade started seeing S. R. Cullom, M.D., in May of 2008.  (Tr. at 460)  He treated her for repeated episodes of sinus problems, congestion, cough, shortness of breath, weakness, and drowsiness over the course of 66 appointments in the next six years.  (Tr. at 428-453, 592-693)  She saw other providers 13 times in that span, and was hospitalized twice.  (Tr. at 466-471, 480-486, 543-559)  Over the six-year span, Dr. Cullom continued prescribing medications Ms. Meade had tried in the past, including the inhaler and updraft machine, and he gave her numerous Decadron shots.  *Id.*  Ms. Meade stated that she experienced blurred vision, weight gain, and drowsiness as side effects from her medications. (Tr. at 274)

Two state-agency medical consultants reviewed the medical and non-medical evidence and found Ms. Meade's complaints stemming from asthma and sinus problems to be fully credible.  (Tr. at 74, 100)  They both stated she could perform medium work but must avoid dust and fumes.  (Tr. at 76, 102)  The ALJ gave these opinions limited weight.  (Tr. at 18)

Ms. Meade argues that the ALJ inferred RFC limitations from medical evidence in the absence of an opinion from any treating doctor about functional restrictions. The record did not include any consultative examination, nor any medical source statement from Ms. Meade's treating physicians. The ALJ did not mention any of Ms. Meade's doctors by name in his opinion, and he did not explain what weight he gave any of those doctors' opinions. He only mentioned the limited weight he ascribed to the state consultants' opinions, and he did not explain what evidence he relied upon for the balance of the weight.

Ms. Meade points out, correctly, that an ALJ cannot draw inferences from medical records and has an independent duty to develop the record fully and fairly. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The ALJ retains this duty to develop the record fully even when the claimant is represented by counsel and is obligated to order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). In light of the lack of opinion evidence, the ALJ had a duty to contact the treating sources or order a consultative examination. 20 C.F.R. § 404.1512(e); *Nevland v. Apfel*, 204 F.3d 853, 857-8 (8th Cir. 2000). A further examination is required if there is not sufficient medical evidence in the record to determine whether a claimant is disabled. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)

The medical record was lacking in this case because no treating physician offered opinions on: 1) Ms. Meade's ability to complete a normal workday; 2) the number of breaks she would require; or 3) the number of absences she would have in a given month. The hypothetical the ALJ first posed to the VE (with the RFC he eventually assigned to Ms. Meade) did not contain any allowance for work breaks or absences.  (Tr. at 52-53) The second hypothetical assumed three or more absences per month, and this scenario eliminated all jobs according to the VE.  (Tr. at 54)  Finally, Ms. Meade's attorney asked the VE how many unscheduled breaks were allowed in the proposed jobs; and he said that consistent unscheduled breaks would not be allowed.  (Tr. at 55)

Because no treating or examining doctor offered an opinion on these important restrictions, and because the ALJ's decision hinged on whether Ms. Meade would require such restrictions, the ALJ's analysis was not supported by substantial evidence.  He should have re-contacted a treating physician or ordered a consultative examination before making his RFC determination.

Ms. Meade suffered from respiratory and sinus problems for at least six years.  Her frequent doctors' visits alone would raise the possibility that she would miss more work than the assigned RFC contemplated.  The ALJ should have developed more medical evidence on the question of functional restrictions, rather than inferring Ms. Meade's functional abilities without giving good reasons for his RFC opinion.

The ALJ supported his RFC decision with his opinion that Ms. Meade was not entirely credible; he opined that her subjective complaints did not accurately reflect the severity of her condition.  (Tr. at 17-18)  Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: the claimant's daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions.  *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).  The ALJ's credibility analysis here was flawed.

First, the two state-agency medical consultants found Ms. Meade fully credible. (Tr. at 74, 100)  Next, contrary to the Commissioner's assertion that Ms. Meade's treatment was conservative in nature (docket entry #15 at 9), she pursued aggressive medical therapies, including surgery, and still suffered for six years without resolution of her impairments.  Ms. Meade complained of medication side effects; and she stated that she slept sitting up and got only got 3-4 hours of sleep a night.  (Tr. at 39-40)

Still, Ms. Meade attempted to meet all of her obligations at home, including cleaning, cooking, caring for her children, and attending her children's school activities and appointments.  (Tr. at 36-37, 267-270)  But she had to take frequent breaks and sit down while doing chores; she experienced bouts of coughing when she tried to cook.  (Tr.

at 36-38)  She said she went to church, but other than that, she did not get out much.  (Tr. at 37)  The ability to do some activities of daily living does not mean a claimant can perform full-time competitive work.  *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995). Ms. Meade had to carry on with her life in spite of her various impairments, and it is conceivable that her activities complicated her illness.  See *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005)("the fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not consistent with her complaints of pain, and in now way directs a finding that she is able to engage in light work"); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).  Ms. Meade's subjective complaints were consistent and credible.

**IV.**    **Conclusion:**

  For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence.  The ALJ failed to fully develop the record and erred in his RFC determination and in his credibility finding.  The decision is hereby reversed and the case remanded with instructions for further review.   This a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

  IT IS SO ORDERED this 31st day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE